Court of Appeals for the 4th Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. Welcome to the Court. Our first case is Carter v. United States. We'll be glad to hear argument from Mr. Cassiano. Is that correct? Yes, Your Honor. Alright. Good morning. Chris Cassiano on behalf of the appellants Ryan Carter and Kathleen Cole. May it please the Court. On April 6, 2018, Appellant Ryan Carter was a 43-year-old inactive-duty Air National Guardsman and a civilian employee of the federal government. Just prior to that time frame, Mr. Carter had completed an active tour of duty with the Air Force. He's inactive in the sense that he wasn't on either active duty or annual duty for training at the time. There's some depends on... I was a JAG officer for a while, so all these acronyms kind of run together. But he was still in the reserves and his full-time employment basically was a corollary to his reserve duty. Is that right? Correct. His full-time employment was as a civilian, but that was a reservist one weekend a month, two weeks every year. And just prior to Mr. Carter's surgery... Do you... I just want to make sure you agree that his, as Judge Agee has indicated, his dual-status technician work was the same as his active duty or guard work. So in other I can't distinguish the two. I don't think we have the discovery to be able to do that. My general understanding and speaking directly with my client, there is some distinction. One requires security clearance, one does not. There's probably some overlap, but I don't think... It's the same type of work. I understand that there may well be some nuances, but he's not a mechanic in one and a pilot in the other. Completely accurate, Your Honor. I think both of his jobs rely upon the same underlying background. So just prior to Mr. Carter's surgery in April of 2018, he was actively on an active tour of duty with the Air Force between August of 2017 and March of 2018. From March 14th through April 6th, Mr. Carter was inactive. He was under no military orders. He had no military responsibilities or duties. On April 6th, Mr. Carter presented to the Walter Reed Medical Center... Am I correct factually that his original injury occurred during basic training or annual duty? Again, a dispute of material fact is in play as it relates to the etiology of his injury. The diagnosis at play when he had his spinal surgery was a degenerative spine condition. Now, I understand there was an injury back in 2010 during basic training and some care related to that. Quite frankly, I think the case law addresses that specifically. But there was an injury back in 2010 during basic training to Mr. Carter's back. Then, ultimately, he develops this degenerative over time condition that requires surgical intervention. From a time frame standpoint, you have effectively a malpractice claim related to the treatment and you have an informed consent claim. When was the consent, the tort related to that? Was that when he was active or after that? The consent form was, I believe, signed at or around the time of the surgery itself, within a day or two. Is the alleged tortious conduct related to the recommendation of surgery, which I think happened in March? It's your claim. When you say more consent should have been done differently, and does that relate at all to what happened in March? Sure. There is an overlap between the medical negligence claim and the informed consent claim. Essentially, they all stem from the same surgery on April 6th. But didn't the nature of informed consent, what you are advised of prior to the procedure, does that have anything to do with it? Absolutely. You're providing consent, so you're advised of the risks, the benefits, and the alternatives of any treatment course. Didn't that happen at least in part in March? Some of the description of the surgery may have occurred in March, but the actual signing and execution of the informed consent form and all the information on there was at the time of surgery. What happened is... I hate to keep going through, but making sure we have established facts. As I understand it, after the surgery, your client was retroactively placed on active duty. Correct. And the government says that, I don't know whether this is disputed or not, that that was at his request because it gave him more access to benefits. It was suggested to him, and certainly he consented to it, being in the position that he was in, a completely vulnerable state. And that retroactivity to active duty allowed him to receive several different types of benefits. So, if there's no dispute that he was on active duty, even though by virtue of retroactive order, doesn't that change the character of this case? I think there is a dispute. We know definitively as of April 6, 2018, he was not on active duty. And that was the case. And it wasn't until 82 days later that his active duty status was implemented retroactively. Well, that's sort of my point. I mean, if he made a conscious choice that he thought was to his benefit to designate himself as being on active duty at the time of the injury, that would seem to make it pretty hard to get around any Ferris argument. Well, I mean, at least from our perspective, we don't believe that Ferris even applies to this case, given the language of the Federal Tort Claims Act and a plain language analysis of the act, which allows for someone like Mr. Carter, who was inactive at the time, to file a Federal Tort Claim Act against a government provider for malpractice. I mean, you may have a good first principles argument there, but you can't do anything about that one, can you? Well, I think you can. Absolutely. I mean, there are... The fact that Mr. Carter was inactive at the time of his surgery in April of 2018 means that Ferris does not apply. And the case laws from the 1940s and onward speaks to that, and we can talk about it. So, I mean, maybe I misunderstood what you said a second ago. I certainly get your argument that his status means that the doctrine doesn't apply. I thought you were suggesting something different, which is that the Supreme Court case itself deviated from the text of the statute, which you may believe, and I think led to that issue. That's an interesting thing for us to talk about, but it's probably not what we can do about it. Right. And I'm happy to talk about that. But I mean, from my perspective, representing my client and his interest, the discussion really is about the facts of this case. I got you. I understand. But we can have that conversation, and it's in the briefing, too. Probably not a good issue. Why don't you tell us why assuming Ferris is applicable, it doesn't apply in this case? So, the case law, I mean, I think it really requires an analysis of the case law. And from a timing perspective, we have that first case, Brooks v. United States, 1949. And what that case essentially, it analyzes the Federal Tort Claims Act statute. And what it says is, initially, the statute indicates that the United States District Court has jurisdiction over any claim founded on negligence and brought against the United States. But then it goes on to say, in that particular opinion by the Supreme Court, that any negligence claim does not mean any claim but that of a serviceman. And there are 12 exceptions to the Federal Tort Claims Act that are articulated in the act that deal with claims arising out of the combatant activities of the military during time of war. This Mr. Carter's surgery in April of 2018 certainly was not arising out of the combatant activities of the military during the time of war. So, his claim falls squarely within the Federal Tort Claims Act and does not implicate Ferris. The Brooks Court also goes on to say that these exceptions are too lengthy and too specific to believe that Congress did not have the servicemen and women in mind when enacting the Federal Tort Claims Act. The Supreme Court doesn't seem to have relied on Brooks very much since it was issued. And they seem to have, despite all the criticism, doubled down and expanded the coverage of what would appear sort of isolated Brooks to its specific facts. Sure. So, let's talk about Ferris because I think that's important. There are three factual patterns embedded in Ferris. There's the Ferris facts, the Jefferson facts, and the Griggs facts. And Ferris was a negligence, wrongful death claim. Jefferson was a medical negligence claim. And Griggs was a medical negligence, wrongful death claim. And what they all had in common was that each claimant was on active duty at the time of the alleged injuries and negligence. Now, if we move forward in time to United States versus Brown, we learn in the holding in that case, which is essentially analogous to Brian Carter's case, is that the injury during an not arise out of or in the course of military service. So, what happened in Brown, we have a service member who sustains a knee injury on active duty during the course of his service. He's discharged. He undergoes an operation at a VA hospital. And during that operation, for that same knee procedure, there's a tourniquet injury, a different injury resulting in permanent nerve damage. And what the United States Supreme Court has said is that that injury, the injury being claimed, the injury that happened intraoperatively is where the analysis begins. What happened leading up to that is irrelevant to the analysis. So, that's after he's discharged. It is after he's discharged. But the analogy, I think, stands true. And essentially, what we're dealing with in this case is the same general theory that supports why veterans can obtain medical care from a government-sponsored VA healthcare provider employed by the government, you know, physicians, surgeons employed by the government. Those claims can proceed. What we have here is something analogous to that. And Brown stands for that proposition. So, all that talk about, well, this injury emanated from something happening at basic training back in 2010, that isn't the injury being claimed. The injury being claimed in this case is the traumatic spinal cord injury to Mr. Carter's cervical spine in April of 2018. That's when the injury happened. But even if we grant you that had he been discharged, so in other words, he had gotten fired from the guard and his dual status role, fine. Brown's sort of an interesting case for you. But that doesn't seem like the issue we've got, right? So, like, I'll grant you, we have neither active service, nor do we have discharge. What I haven't heard you, and I'm happy for you to keep going, but what I was hoping you were going to tell us is why we ought to think that his status is more analogous or looks like or ought to be treated like discharge instead of like active service, right? I mean, those are the two poles. If we were on either pole, this would be easy. But we know that it's not limited to, like, technical active status, because we have cases that have applied it where you're not technically in active status. And discharge doesn't necessarily always require, like, full discharge. There are, like, steps that are short of that TLDR that we might think about as being effectively discharged. And so we're, like, in this balancing world between these two poles. But what I hadn't heard you talk about at all is why you think this status, where he's doing the same work no matter whether he's on duty or not, whether he's, you know, has to be a member of the guard, all of those things, why we ought to think that that looks like discharge as opposed to more analogous or looks more like active service. I'm not sure that this is the right metric, but that's the metric we've got to apply. And that makes complete sense. And I appreciate you bringing that up. So we do clearly fall. It's not a middle-of-the-road argument. It is a situation where we are close, if not on the threshold of discharge, where we have a inactive duty, essentially government worker, who is not under any specific orders. There's no military orders in place at all when Mr. Carter goes to the hospital and has this surgery. There is no military rationale for what he's doing. He, this is an elective. Wait, wait, stop, there's no military, I mean, right, I understand the first argument. To say there's no military rationale for what he's doing seems like a little bit of a stretch, right? So we can talk about lots of different things here. But when, like, that's a little bit of the challenge. Like, I understand you have an argument. But as soon as you say there's no military rationale for what's going on here, right, that doesn't work, right? Plainly, there's a military rationale. It's a personal rationale. He wants to get better. He wants to be able to feel his fingertips. He wants to be able to continue to work and gainfully make a living. And that's why this was an elective procedure. He could have done it at a government facility. He could have done it elsewhere at a private facility. Let's see my time. You've certainly got time on rebuttal. And we'll now hear from Mr. Sturgill. Good morning. May it please the court, I'm Lowell Sturgill from the Department of Justice representing the United States. District Court correctly dismissed this case pursuant to the Ferris Doctrine because Staff Sergeant Carter received the surgery he alleges was constituted malpractice at Walter Reed Hospital, which is a military hospital, because he was still in the military. And that's enough by itself to render the Ferris Doctrine applicable. It's undisputed in this record. So is a military hospital, in your mind, different than a veterans hospital? Or is there a distinction there? So there is not a distinction. But isn't that a problem to say? I mean, having the tortious conduct take place at a veterans hospital would you say by an inactive or discharged serviceman? Would that implicate Ferris? So the key is, is the service member still in the military? OK, so if he's discharged in a veterans hospital, the answer is no? Correct. OK. If he's in the military in any way, shape, or form, and he's in a veterans hospital as opposed to Walter Reed, that would implicate Ferris? Yes, Your Honor. That shouldn't make a difference. If the military, the key again is, is he in the military or is he not in the military? But don't I, isn't there a little bit of a, I mean, yeah, I hear that. And I think you might could square all that. That's where all these cases kind of are difficult to put together into any sort of, you know, kind of organized form. But I mean, you know, our Bradley and Kendrick cases both deal with some status that I guess you would say is still in the military. Is that right? So this court said that it's tantamount, that TDRL is tantamount to discharge. The big difference is Sergeant Carter, he had not been discharged. He could be, if he was fit for duty, he could be recalled to duty and deployed. Right, I agree. I understand that. Somebody who's on TDRL, those people are essentially out the door. They're not receiving military pay, can't be recalled to active duty, can't be deployed. So if he's in that status or discharge, there's a line there. And if you're on the other side of not just discharge, but this, you know, TDRL status, yeah, that's, that's, then you have the affairs being applicable. Right. So if you look at your cases, Apple Hans, for example, was a MedMAL case and the service was on indefinite excess leave. And the court said Ferris barred that case, even though it certainly was not under orders. He was not out fighting or training or something. He was just trying to convalesce. And the whole point of this, the whole point of what was going on with Sergeant Carter is trying to see if he could be made better so he would be fit for duty and he could be deployed and served. So what's the significance that he was both a member of the active reserve, not that he was activated at the time, but he also had this dual status so that there was somewhat seamless between active duty when he's in annual training and what he does on a day-to-day basis. So the courts have all held that the Ferris Doctrine does apply to dual status technicians. The question is... Not all of them, right? Well, the Federal Circuit, at least in one context, said it doesn't, right? That's correct. And we think that's wrong. We have resisted that in one and other circuits, the Supreme Court... No, I understand. I just, just don't, again, don't overstate, right? You got a strong argument. There's no reason to say they've all held this when that's not, like, actually right. So my apologies, I forgot about the Federal Circuit, but you're right. I forgot what the question was, but again, our position is, is the person in the military, did they receive the service because they're in the military from a military facility? Is the government's position that the dual status matters? So, I mean, you could imagine that there being, like, two different ways of deciding this. He is a National Guardsman, right? And so that that might be sufficient or might not. We could have a discussion about that. But a dual status is on top of that. Every dual status technician is, by definition, a National Guardsman. But every National Guardsman is not, by definition, a dual status technician. Does the government have a position on whether merely being a National Guardsman, if he was not a dual status technician, would that implicate Ferris? So it would, Your Honor. The courts have held that National Guardsmen can be subject to the Ferris Doctrine. And again, in a medical malpractice case, the incident to service aspects of what's going on are pretty much just a given. Because what's happening is the service member is receiving military benefit because of their military service. So it's no different than going to a swim in a military pool or go participate in a donkey basketball game. Recreational benefits. It's another benefit. And it's provided for military purposes to try it again. Why do you say that? You said that earlier. And you all seem to be saying different things there. You're saying it's being provided for military purposes. Your colleague says it's because he wants to get better. Yeah. Why do you say it's for military purposes? So a service member's own individual motivation may be to try to get better. But that's not what counts. What counts is why is the military providing this service? And they're providing it in part to make somebody better. But again, the orders in this case show that what was going on is they were trying to assess his fitness for duty and trying to render him fit to be recalled and potentially deployed. If that's what was going on. That's why the military... And it really doesn't matter anyway what the motivation is. The courts have held that even elected surgery in military medical facilities for purely personal reasons is subject to the Farrer's doctrine. I believe the Appelhaus case either held that or cited the cases that hold that. I believe that's right. But I'm confident... That's because... So I guess there are two ways of looking at that. On the one hand, it's to make him better able to serve the military. On the other hand, it's a benefit that's provided that attracts and retains military employees. Right. Those are two sides of the same coin. So it doesn't really make a difference whether... In this instance, it had exclusively a military purpose because the non-military purpose effectively is to attract and retain military employees, which is itself a military purpose. Exactly. What significance, if any, is the government attached to this retroactive placement on active duty? So we think it's not necessary for Farrer's to apply in this case, but that it's an additional factor that supports... That further supports applying the Farrer's bar here. Again, our bottom line... This is what the district court... Bottom line is he was in the military. Walter Reed only serves people who were either in the military or dependents or veterans. He wasn't a veteran because he hadn't been discharged and he could be recalled to duty. So he got the surgery in his status and because he was in the military. The Franz Declaration says this straight out, page 371. The government agrees that if he was... Had Walter Reed known he was merely a National Guardsman and a dual status technician, that Walter Reed would not have provided the surgery to him? So that would not have made a difference? Wouldn't have made a difference in whether he would provide the service or wouldn't have made a difference in the applicability of Farrer's? So, either. Yeah, but can you... But talk first about whether he would have gotten the service because there are these statements that say he only got service at Walter Reed... He only was entitled to service at Walter Reed if he was on active duty. You seem to suggest that maybe is not true? So entitlement is a term of art here that can mean different things. And what we believe the record shows is that he was entitled to the surgery at Walter Reed because he was a member of the military. That's what the Franz Declaration says. The Doyle Declaration says that. Then there's this question of, well, what was his actual status at the time, active duty or not? And what Colonel Carbonell explains is that in his judgment for military accounting purposes, essentially paperwork accounting purposes, he needed to put him on these orders so that he could basically mostly receive pay. Because when you're on active duty, you get better pay than you otherwise would. So Carter came in. He said, hey, I really would like to be on pay status while I'm recovering from this surgery. Carbonell says, well, yeah, because we take care of our people. You were injured. The original injury was because you fell off a bar in basic training. And we've been treating you since then. So yeah, I'm going to put you on a pay status. And then he notices, oh, by the way, yeah, you weren't on active duty at the actual time of the surgery. So I'm going to backdate it just to make sure our paperwork is correct. So that shouldn't make a difference for the Bearer's Doctrine. And in fact, it doesn't. The closest case is the Jackson case from the Ninth Circuit, which district court addressed, and which I think is really worth a close look because the facts are so similar. In Jackson, the service member went, he was a reservist, and he sort of went to his weekend training. He injured his hand. And then the next day, he went to a military medical provider and said, hey, my hand's hurt. And by that point, his weekend training was over. So he was on inactive status again. And the doctor said, well, yeah, what you should really do is get this paperwork thing figured out, get your authorization, and then come back. And then he sued. And he said, oh, well, that was malpractice. You should have treated me right at the time. And what the Ninth Circuit held was that Bearer barred the case because just the mere fact that he was on inactive status and he had to do this, had this paperwork figured out, didn't mean that the injury he alleges didn't arise out of his military relationship with the government. We think that's the right way to look at this case. Can I go back to your point earlier? Because the record here has this line, and I'm just looking at the 464, which is quoting Colonel Carbonell, where he says, as a military technician and a drilling member of the Air National Guard, Sergeant Carter normally would not have been eligible for medical care or surgery at a military hospital such as Walter Reed. You think that line is wrong. So I'm literally just, I just want to know the facts. It doesn't crucially matter here, maybe, but we also like to know what actually is the standard. I have had the presumption that that sentence was true, but you've suggested that sentence is false. Well, I think you have to read that sentence in the context of the rest of what the colonel says. And what the colonel is saying is, gee, what I needed to do is just write these duty orders. And so it really comes down to a paperwork, accounting, internal military matter, dotting all the i's. But from your perspective, is that sentence in isolation? Is it true or false? It's true if it's understood in the context of the rest of what he's saying. And I think, again, you have to go back to the fact that it's undisputed that Walter Reed only treats people who are in the military, dependents, and people who are veterans, discharged people. He's got to be one of those three things. It's never disputed. When you say the words in the military, what is the regulation or statute that I look to to understand what that means for purposes of Walter Reed? So you use that phrase, but I take it you're not using that phrase in a technical sense. You're using it in a euphemistic sense. Where do I look to find the scope of Walter Reed's services? So that is not in the record. What you have is the declaration. But if there's a regulation or statute, you can point to a regulation or statute, right? That's just what the law is. So I apologize, I don't have a site on hand. If you don't know, that's totally fine. To say it's not in the record, I'm totally fine with you saying, I don't know. I thought you were saying you couldn't tell me because it wasn't in the record. I don't know. It would be the statute that sets out when a person is discharged as opposed to not discharged. I'd be happy to provide that if the court would be interested. Counsel, I can tell from what you've said so far, you don't think this is determinative or maybe even matters. But do you concede the alleged tortious conduct was all outside after the time that Carter was active duty, disregarding the retroactive move? So for purposes of the motion to dismiss, yes. I'd like to just go through a few of the things that were said in the opening, if that would be helpful. First of all, Carter doesn't have a single case that applies the Ferris Doctrine in this kind of a situation. He cites the Brooks case from the Supreme Court. Well, in Seoca, this court described Brooks as a garden variety automobile accident that had obviously nothing to do with the person's military service. Again, facts of Brooks, their service member is off the base. Don't leave. He's driving his private automobile. He happens to get hit by somebody driving a military vehicle. And the court says, this obviously has nothing to do with his military service. And this couldn't be any different. This case couldn't. He's in the military. He's getting surgery because of his military status in a military hospital. Totally different. Counsel, there was a opposing counsel seemed to indicate, maybe I didn't hear this correctly, that there was a factual dispute as to whether the original injury to Mr. Carter was the cause of his medical problem that took him to Walter Reed. That was news to me. But I think it doesn't matter. Because again, for our purposes, was the service member in the military? Did they receive medical care because of the fact that they were in the military? Had a military from military providers? That's what made Ferris applicable. And it doesn't matter whether it was elected surgery or the person was hurt, again, in the swimming pool or whatever. It's their entitlement to this treatment. In fact, they were treated that way. The rationales that support the Ferris Doctrine also support applying Ferris here for the reasons the district court provided. First of all, Ferris essentially acts like a workers' comp program for military people. They give up the right to bring tort suits. And they receive statutory, general statutory benefits. So Sergeant Carter got free medical care. He got pay. He's still receiving VA care, extensive benefits. And it doesn't make sense to think to allow a service member to bring a tort suit on top of all these other generous statutory remedies. Is there any interference, intrusion into military affairs other than the time involved of dealing with the litigation? So the district court citing the Fifth Circuit and Schomer said that, yes, in addition to that, if these kinds of suits were allowed, then the military would have to potentially change how it allocates resources. It may have to over-allocate military resources to cover one particular fact scenario or another. And those judgments should be for the military. Sorry. That's OK. I appreciate that. But I mean, I'm asking you, in this case, is there any, does the United States say that there's any intrusion in military matters, any chain of command issues, any real policy issues that would be implicated by this suit other than the time involved in litigation? Sure. I mean, well, it's hard to know at this point. But if the case were to develop, it could be that, in fact, I can say now, if he were to get a tort judgment in this case, the military would have to potentially, would have to evaluate whether it ought to devote more resources to this kind of situation or maybe have more oversight of doctors or who knows what that would impair military judgments about how to run Walter Reed, essentially, its military facilities. The Schomer case from the Fifth Circuit lays all this out. And what would you not, I mean, and maybe that's the point. That means any adverse verdict were one to be permitted. Might result in response to the adverse verdict. And maybe that's the point. It's that broad. But that's essentially what you're saying. That if there's, if we didn't have this doctrine, whether or not it affects a true chain of command or an actual military policy, there'd be a need to potentially adjust what the military does. Is that how you read that factor or that rationale? I would say as applied to Med-Mal claims and any claim where a service member is enjoying benefits because they're a member of the military, in that kind of a context, then the third fairest rationale about affecting military decision making is implicated in all of those cases. Beyond Med-Mal and benefits, I would not take a position on that this morning. You don't have to. It may be that it applies differently in the other contexts, but not in this one. I mean, as we know, it's fair as itself involved to Med-Mal claims. And the clearest thing in the law that I read is that, again, simple rules. They're as far as Med-Mal claims by soldiers if they got the service, the military medical care in question because they were in the military. Thank you very much, Mr. Sturgill. Mr. Cassiano, you've got some argument time left. Thank you, Your Honor. I'll just dovetail off of what counsel was just talking about and the rationales and specifically address that military discipline rationale. So this rationalization is premised on the notion that service members' suits under the Federal Tort Claims Act would undermine military discipline and civilian courts would be required to second-guess military decision-making. We don't have that here in the setting of medical care, criticisms of an individual medical or several individual medical providers. The implications of undermining discipline and second-guessing military decision-making, that rationale is nowhere to be found in this particular analysis. And similarly, there was some discussion in the case law about the effect that litigation like this may have on the willingness of such personnel to follow orders. Again, not something that is implicated and not a rationale that applies to Mr. Carter's case. One of the other rationales is the benefits that Mr. Carter could receive and has received as a result of his injuries. Those benefits, those veteran benefits, there's no exclusivity provision in the Federal Tort Claims Act that precludes a claim in the setting of veteran benefits. And the Brooks Court addressed this, Brown addressed this, and Brooks says, nothing in the Federal Tort Claims Act or the veterans' laws provides for exclusiveness of remedy. And the court refused to call either remedy exclusive when Congress has not done so. And in Brown, the court goes on to say, Congress had given no indication that it made the right to veteran benefits compensation the exclusive remedy. So here, we know that there are certain things that will be covered by the military. But there is, I think it's not a secret that there are systemic problems in the Veterans Administration healthcare system, including quality and access issues. And the true cost of Mr. Carter's injuries, those non-economic costs that we don't have a bill for losing his livelihood, losing his ability to parent, losing his ability to be a husband to his wife, those are not compensated for in the veteran benefits analysis. And the first rationale is the venue provision. Why should a service member who's active, who's being deployed around the country have to, why should the fate of that individual's case be dependent upon the venue where the incident occurs? Here we have Mr. Carter who's inactive, who is undergoing an elective procedure. He could have done that at the VA, he could have at a government facility, he could have done that privately at Johns Hopkins or some other facility privately. But he elected to go the government route. He's under no medical orders, he's under no military orders. And so this venue provision really doesn't come into play. And I think Justice Scalia said it perfectly in his dissent in the U.S. v. Johnson opinion, where he says, the unfairness to servicemen of geographically varied recovery is an absurd justification given that non-uniform recovery cannot possibly be worse than what Ferris provides, uniform non-recovery. But that was a dissent. That was a dissent. Um, do you agree, we talked a little bit about the, whether there's a dispute about where these injuries stemmed from. Given this 12B1 motion, wasn't the district court entitled to make that factual finding that it originally stemmed from his basic training injury? I believe the, you can correct me if I'm wrong, but I believe any sort of uncertainty or dispute of material fact must be determined in favor of the non-moving party. On 12B6, but on a jurisdictional inquiry, right? We courts all the time have to make findings about whether jurisdiction exists and you don't get to just omit an allegation, right? I understand your complaint doesn't allege why he has back problems. But there seems to have been evidence that was put in that it originally began at basic training. I guess maybe I didn't see the evidence that contradicted that, but the district court seemed to find that that was where it began. And that's fine. I think the contradictory evidence, at least in the initial complaint, is that his condition and the diagnosis that prompted the surgery was identified as a degenerative spine condition, not identifying any specific traumatic event that occurred prior. This is a more overtime degenerative condition. And I think that whole analysis is irrelevant in light of US v. Brown. But degenerative, because what you think is responsive to that or the dispute of fact is because it's called degenerative, it can't have begun during basic training. It must have begun when he was born or something. No, no, no, no. It's just something that happens probably to all of us over time. You have this degenerative, as you're standing up, worsening of your spine. Now, did the injury at basic training help? Certainly not. But the underlying allegation and the surgery in question is due to a degenerative condition. Thank you. Thank you very much. We'll come down and greet counsel and move on to our next case.
judges: G. Steven Agee, Julius N. Richardson, A. Marvin Quattlebaum Jr.